## Bassett v. Bassett.

(Decided May 21, 1914.)

## Appeal from Grayson Circuit Court.

1. Contracts—Verbal Agreements Merged in Written—Where parties have verbal negotiations in respect to a trade and afterwards put their agreement in writing, the writing will express the whole contract between the parties in the absence of fraud or mistake

2. Contracts—Constructing of Writing.—"E" and "R," after a good deal of talk as to a contract between them involving a partnership interest in land, agreed in writing that "R" should pay one-half of the purchase price and other expenses connected with the transaction and share equally with "E" in the profits arising from a sale of the land. This writing contemplated that "R" should pay his part of the purchase price and expenses as they were required to be paid, and, it appearing that "R" did not pay anything, he was not entitled to any interest in the land, although he construed the contract to mean that he was to pay his part of the expenses after the land was sold out of the proceeds of the sale.

O'REAR & WILLIAMS, G. W. STONE and L. A. FAUREST for appellant.

H. L. JAMES, GEORGE HOLBERT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, R. J. Bassett, in 1912 brought this suit in equity against the appellant, E. R. Bassett, in which he averred that in 1909 he and E. R. Bassett entered into a verbal agreement to and did purchase certain tracts of land in Grayson County, Ky., aggregating 2,650 acres, describing it. That E. R. Bassett, fraudulently and knowingly, and without his knowledge or consent, had the title to the land conveyed to himself, when it should have been conveyed to both of them jointly so as to invest each with an undivided one-half interest. That he had equally and jointly with E. R. Bassett assisted in raising and securing the purchase price and contributed equally and jointly with him in paying for the land. That when he discovered that the title had been conveyed to E. R. Bassett alone, he demanded of him some acknowledgment of his interest in the land, and thereupon E. R. Bassett executed and delivered to him the following paper:

"July 5, 1909. Whereas on May 20, 1909, the Cincinnati Cooperage Co. made a deed to E. R. Bassett conveying 2,650 acres of land in Grayson County, Ky., for the sum of $8,925.00. Now this is to certify that R. J. Bassett is to pay one-half of said purchase price of the land and one-half of all expense, interest and costs and taxes, and to share equally with E. R. Bassett in the profits arising from the sale of said land and to share equally with E. R. Bassett in any losses that might be sustained."

He further averred that since the purchase of the land E. R. Bassett had sold a part of it, and prayed for a reformation of the deed so that it might show his interest in the land, for a settlement of the partnership and a sale of the land remaining unsold.

In an amended petition, filed after all the evidence in the case had been taken, and for the purpose, as averred, of conforming to the proof, he set up that in May, 1909, they entered into a verbal partnership agreement under and by the terms of which they were to purchase and sell for their joint account the land described in the petition. That the land was bought for the purpose of being sold, and they were to share equally in the profits that might be made and bear equally any losses that might be sustained in the venture. That when the partnership was formed, they agreed upon a plan for raising the money with which to make the cash payments on the land, and under this agreement each of them was to assist in raising the fund, and that he performed his part of the agreement. That neither of them furnished any of his own money with which to make the payments, but that through their joint efforts and the use of their joint credits, the money to make the payments was secured.

The amended petition was controverted of record, and to the original petition E. R. Bassett filed an answer in which, after denying many of the averments of the petition, including so much of it as averred that there was a verbal agreement of partnership between them, he admitted the execution of the writing dated July 5th, 1909, but averred that it had never been accepted by R. J. Bassett. That the writing was executed in consideration of the agreement of R. J. Bassett to pay one-half of the purchase price of the land and one-half of all expense, interest, cost and taxes, and that he had failed to

pay any part thereof. That the payment of these sums was a condition precedent to his acquiring any interest in the land and to his liability on the writing, and that the writing was in fact merely an offer to allow R. J. Bassett to acquire an interest in the land by the payment of the sums stipulated in the writing. That as R. J. Bassett had never paid anything, the writing never became binding, and therefore he was not entitled to any interest in the land.

A reply, controverting the affirmative matter in the answer, completed the pleadings.

It will be observed that in the petition, R. J. Bassett, after setting up the verbal agreement of partnership and the writing of July 5th acknowledging its existence, expressly averred that he "equally and jointly and with the said defendant assisted in raising and securing the money to pay the said purchase price and contributed equally and jointly with the defendant in paying for same"; while in the amended petition he abandoned the theory that he had paid or contributed to pay any part of the purchase money or expenses attending the transaction, and put his right of recovery upon the ground that "by the terms of the agreement the said tract of land was bought to be thereafter sold, and the plaintiff and defendant were to share equally in the profits that might be made or any losses that might be sustained in the venture; that they at said time agreed upon a plan for raising the money with which to make cash payments on the land, and under said agreement each of them was to assist in raising said funds."

"That the plaintiff performed his part of said agreement, and on the ............... day of May, 1909, as such partners they purchased from the Cincinnati Cooperage Co. the land. That neither the plaintiff nor defendant furnished money of his own with which to make the payments or any payments, but through their joint efforts and the use of their joint credit money was secured with which to make said payments. * * *. That thereafter on his demand the defendant prepared, executed, signed and delivered to this plaintiff a writing mentioned in the original petition, and that said writing was intended as an acknowledgment of the previous parol contract which had been made between the plaintiff and defendant and as an evidence thereof."

The record shows without contradiction that on May 20, 1909, the land was conveyed to E. R. Bassett for the consideration of $8,925.00, $5,000.00 of which was paid in cash and of the remainder $1,000.00 was to be paid in sixty days and the balance in equal payments due in twelve and eighteen months, and further shows that the writing of July 5th was executed and delivered.

R. J. Bassett testified very positively that a verbal contract of partnership was entered into before the deed was made, and that the writing of July 5th was executed merely for the purpose of evidencing the parol contract which had theretofore been made; while E. R. Bassett is equally emphatic in his denial that there was at any time any verbal contract of partnership between them and in his assertion that the writing contained the only contract. Relating how the writing of July 5th came to be executed, E. R. Bassett said:

"After I had gone to Cincinnati and made the deal with the Cincinnati Cooperage Co., had paid the purchase price, executed the notes for the deferred payments and got my deed, I talked to a good many people in and around the bank about what a good thing I had in the purchase, and R. J. Bassett seemed to want to get into it. I thought that if he would perform the stipulations in this writing by paying one-half the purchase price, and one-half the interest, taxes and costs, that it would make money matters with me easier, and I might be able, if he would comply with the terms of this contract, to handle other deals of this kind. I doubted his ability to perform his part of the agreement, but I wrote out this paper and gave it to him some two months after the deal was made with the Cincinnati Cooperage Co. He failed and has never complied with any of the terms of this writing, and I have treated it as a nullity long since. * * * The writing presents the whole contract. I did not tell him anything. Everything that was said and done is embraced in that written contract."

R. J. Bassett related as follows the verbal contract between himself and E. R. Bassett: "E. R. Bassett came to me and told me of the proposition of the Cooperage Company, and that if I would help him out on it we could make at least $5,000.00 on it each. I told him that I did not have the money, and he said that he did not either, but if I could help him through the bank, we could buy it without money and make it pay for itself.

I told him that it was too big a proposition, but if we paid $5,000.00 down we could certainly get some time on the balance, and I could handle it. We wrote them and got a proposition of $5,000.00 cash, $1,000.00 in sixty days, and balance in twelve and eighteen months. E. R. Bassett wanted me to take a note of Allison, due in eighteen months, a draft on the Bank of Woodburn for $1,200.00, and he would borrow $500.00 from the Citizens' National Bank of Louisville and me take his note for the balance until we could sell the land and take up these notes with the proceeds. He thought that we could dispose of the most of it in the first year. I told him that I could not use his notes, but could take his note and exchange my sister's note and use hers, which I did. This was E. R. Bassett's proposition, and it was carried out. Q. Where and when was this agreement made? A. Made in the bank just before the purchase of the land. Q. Was it reduced to writing? A. No, sir. Q. State whether or not any thing was said in that agreement as to what interest you and the defendant were to have in this land? A. We were to be full partners, and he stated in his proposition that we would make $5,000.00 each. Q. Was it or not stated and agreed to by both of you at that time that you were to be full partners in this land? A. Yes, sir.''

The following questions and answers give R. J. Bassett's version of the written contract: ''I will ask you, Mr. Bassett, whether in this action you depend upon a contract as stated by you on the second page of your deposition, if such contract was made, or do you depend upon a contract containing a stipulation as set out in said writing of July 5th, 1909, filed with your petition as exhibit B? A. I depended in the beginning upon the verbal contract, and E. R. Bassett at my request gave me this written contract, which I considered a written statement of the first. Q. When E. R. Bassett executed that paper B, and delivered the same to you did you accept it on the stipulations contained in the paper? A. I requested it in the writing to show that I had a half interest in the land according to the original agreement. It was given to me for that purpose and I so understood it. Q. In taking that paper you never intended to pay half the purchase price named therein? A. I intended to pay half the purchase price, expenses and everything the same way that E. R. Bassett did,

out of my part from the proceeds of the land, and so understood that contract marked B. Q. If that was the understanding, why did you not have that put in the writing? A. I requested E. R. Bassett to give me a writing showing that and he gave me this paper and asked me if it was satisfactory. I understood that it showed that, and so understand it yet, and E. R. Bassett has never denied it up to the time of this suit, nor questioned my ownership. He prepared the writing himself and I could have had any change made at the time if I had known that it was necessary. Q. Then I understand you to mean that the expression in that paper which says, 'This is to certify that R. J. Bassett is to pay one-half of the purchase price of the land,' don't mean that, but was to be interpreted that the land was to be paid for out of the proceeds of the land and save you and him from paying for it? A. My understanding was as soon as we got the land in our possession we were to begin selling it, and I was to raise the money upon the notes and make it pay for itself, which I did.''

On this evidence the first question that naturally suggests itself is, was the verbal agreement, made as claimed by R. J. Bassett in May, 1909, before the land was purchased, merged in the writing of July 5th, and did that writing express the contract between the parties? Another related question is, if the writing did express the contract, has R. J. Bassett, by his admitted failure to perform the conditions of the written contract, forfeited his right to any interest in this land?

There is no charge or intimation of fraud or mistake in the execution of the written contract, and, under the well-settled rule that all prior verbal engagements concerning a contemplated trade between the parties are to be treated as having been merged in the writing executed by them after the verbal negotiations have ended, we think there can be no doubt that the writing of July 5th must be considered as containing the contract between these parties. Indeed we understand from the evidence of R. J. Bassett that he regards this writing as expressing their contract, and so treating the case the rights of the parties are to be determined solely by the contract.

Looking at the matter from this standpoint, the issue between the parties as to the terms of the contract grows out of their different views as to its meaning. R.

J. Bassett says that his understanding of the writing is and was that he should pay his one-half of the purchase price and other expenses and costs out of the proceeds realized from a sale of the land, or, as he expresses it, "the land was to pay for itself." In other words, his view is that he was not expected to and did not put up any money or incur any obligation in the purchase of the land, but on account of the assistance he rendered E. R. Bassett in securing the money to make the first payment, he was to own a half interest in the land and pay his one-half of the indebtedness out of the proceeds of the land.

But the contract is not fairly susceptible of this interpretation. It expressly provides that "R. J. Bassett is to pay one-half of said purchase price of the land and one-half of all expense, interest and costs and taxes, and to share equally with E. R. Bassett in the profits arising from the sale of said land." We do not find in the contract anything from which it may reasonably be inferred that R. J. Bassett was only to pay his one-half out of the proceeds of the land whenever it might be sold. This contract contemplates that each of the parties shall bear one-half of the expenses and pay one-half the purchase price, and manifestly this means that these payments were to be made equally when they were required to be made. It seems plain that if E. R. Bassett paid, as the record shows that he did, all the purchase price and all the expense, that R. J. Bassett did not perform the conditions of the contract by which he was to have an interest in the land.

As we construe this writing, it submitted to R. J. Bassett an option giving him the right to pay one-half the purchase price and one-half the expense, interest and costs and taxes, in consideration of which he was to have an equal interest in the profits with E. R. Bassett, who recognized his right to an equal interest when he paid his part of the price. Whether he had an interest in the profits or not depended on his election to accept the option and pay one-half of the purchase price and one-half of all expenses, interest, costs and taxes, and this he did not do. There is no condition in the writing conferring upon R. J. Bassett the privilege of securing an interest in the land in consideration of the assistance he rendered E. R. Bassett in his—E. R. Bassett's—efforts to raise the money to pay the purchase price.

Nor is there any suggestion in the writing that in consideration of this assistance R. J. Bassett should have an interest in the profits that might be realized from a sale of the land. Whatever right he might have had, and it is extremely doubtful if he could have any, to an interest in this land under the verbal arrangement by which he agreed to use his position as a bank officer to raise money by lawful as well as unlawful, or, to say the least, questionable methods, were voluntarily surrendered when he accepted this writing as the contract.

Putting aside as irrelevant all the talk between the parties prior to the execution of the writing, and looking to this writing alone as containing the contract between them, we are unable to find anything in it that would authorize us to give R. J. Bassett a one-half interest in this land. He has never made, and, as we understand his evidence, does not feel himself under any obligations to make, any payments on the purchase price or in defraying other expenses unless he can get enough out of the proceeds of the land to enable him to do so. In short, his whole claim to an interest in this land had its origin in schemes of very doubtful propriety by which he undertook to, and the record shows did, assist E. R. Bassett in raising the money. But under the written contract these efforts and this assistance were ignored and his right to an interest in the land put entirely upon his undertaking to defray one-half of the expenses.

A great deal is said in the record about declarations of E. R. Bassett in which he recognized R. J. Bassett as a partner in the ownership of the land; but such of these declarations as were made previous to the writing are not competent and the ones subsequently made are not inconsistent with the writing, and for this reason we have not considered it necessary to extend this opinion in comments on this evidence.

It is further urged that if this writing should be treated as an option, it did not fix any time when R. J. Bassett should contribute his part of the money necessary to comply with the terms of the contract, and therefore, as time was not the essence of the contract, R. J. Bassett had a reasonable time in which to pay his part, and that when he has paid his part out of the proceeds of the sale of the land, this payment will be a compliance with the contract.

We do not find ourselves able to agree with this construction of the contract. It seems clearly to contemplate that the money should be contributed as needed. But aside from this there is no demand in either the pleadings or evidence upon which to rest a right of this kind.

Other questions than the one we have discussed have been presented by counsel, but we have not thought it necessary to discuss them, because, in our view of the contract between these parties, after a full and careful consideration of the record, with the aid of oral argument as well as briefs, their rights are to be determined by the writing, and upon this question we have reached the conclusion that R. J. Bassett is not entitled to any of the relief sought.

Wherefore, the judgment is reversed with directions to dismiss the petition.