## Ewing, et al. v. Bond, et al.

(Decided October 24, 1919.)

### Appeal from Boyd Circuit Court.

1. Contracts—Oral Conversations or Agreements.—Prior oral conversations and agreements will be presumed in the absence of a showing of fraud or mistake to be merged in a subsequently executed written agreement.

2. Principal and Agent—Agency.—Agency may not be established by the proven statements of the alleged agent.

3. Contracts—Real Estate Broker's Commissions.—Before a real estate broker is entitled to his commissions he must show a contract with the owner of the land and that he complied at least substantially with the terms of that contract. In this case the testimony examined and held that there was a failure to show any contract employing plaintiffs, and that they failed to comply with the terms of their alleged contract had the proof established it.

ED C. O'REAR, J. B. ADAMSON, MAYNARD F. STILES, J. A. WILLIAMS, R. D. DAVIS, S. S. WILLIS and J. C. JONES for appellants.

GEORGE B. MARTIN, H. J. JOHNSON and CASPER C. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit was filed by appellants (plaintiffs below) against appellees (defendants below) to recover the sum of $325,000.00 which plaintiffs alleged was due them from defendants because of their employment under a contract of April 24, 1913, whereby defendants agreed to allow plaintiffs as commissions all above the sum of $600,000.00 which might be realized from the sale of about 27,500 acres of land lying in Jackson and Rockcastle counties, most of which was in the former county, if the purchase was made by one produced or furnished by plaintiffs.

It was alleged that by the terms of the contract sued on plaintiffs agreed to furnish an acceptable purchaser of the property upon terms satisfactory to defendants and to the proposed purchaser and that they were to have as their commissions the excess above $600,000.00 which the purchaser might pay for the property. They alleged that they furnished to defendants within the time agreed upon, which was thirty days from the date of the contract, the Standard Furniture Company, a New York corporation, and that it was ready and willing to purchase the property but that defendants and the Standard Furniture Company entered into a conspiracy for the purpose of depriving plaintiffs of the benefit of their contract and that instead of the furniture company purchasing the property its officers and the individual defendant, N. U. Bond, and his co-defendant, the Bond Lumber Company, formed another corporation, the defendant, Bond-Foley Lumber Company, and that the latter company purchased the timber on the land for $612,500.00 leaving the Bond Lumber Company the holder of the title to the land after the timber had been sold and which was worth $300,000.00 or more.

The answer put in issue all the allegations of the petition, and upon trial, after plaintiffs had finished introducing their testimony, the court sustained a motion made by defendants to direct a verdict in their favor which verdict was followed by a judgment dismissing the petition and to reverse it plaintiffs prosecute this appeal.

Prior to February, 1913, the title to the land was held by the defendant, Rockcastle Mining, Lumber and Oil Company, but the charter of that company expired in July, 1913. Its entire stock was held by the defendant, N. U. Bond, and his brothers and sisters. They formed the Bond Lumber Company, which in February, 1913,

took over the property and held it at the time of the alleged contract sued on.

The paper which plaintiffs rely upon as constituting the contract upon which they base their suit is in the form of a letter addressed to plaintiff, W. C. Dunnington, and one E. H. Sincell, who was made a plaintiff in the petition when it was filed but who afterwards filed a renunciation and withdrew from the suit. It was dated April 24, 1913, and was written at Oakland, Maryland; and omitting the heading it is in these words:

"Dear Gentlemen: As per our talk today, I am pleased to advise you the same by letter, and that is the fact that my brothers and I do not wish to option our Jackson county, Kentucky, property, yet we will sell the same for $600,000.00, $100,000.00 cash, and the rest in equal annual installments of $100,000.00 each, with interest.

"I am also free to state to you that if your parties go right on and look the property over, we will not sell the same to any other parties without giving your parties the first opportunity to buy, nor will we price the property to any other parties that it has not already been priced to, until your parties has been given an opportunity to buy, which in no case shall exceed thirty days from the date of this letter.

"I also wish to state that I have authority to give a thirty day option on this property on the payment of $10,000.00, which shall be applied as purchase money, should the property be taken over, but to be forfeited in case it is not.

"This letter is not to be considered as an option, nor must it be considered that we are appointing you as our agent to sell this property, but merely as a statement of the situation as it exists and that is how we would dispose of this property should your parties be here present with us to deal for same today. I remain, yours very truly, N. U. Bond."

Upon receipt of this letter plaintiff, Dunnington, telegraphed his co-plaintiff, Ewing, at Catlettsburg, Kentucky, in substance, that he had thirty days' control of the property and for him to have the proposed purchaser immediately look at it. Accordingly Ewing sent plaintiff, G. W. Cliness, with one Fred P. Daybolt, who plaintiffs claimed was the agent of the Standard Furniture Company, to look at the land, and they spent about two days

upon it and while there met and had some conversations with defendant, N. U. Bond, but which conversation appear to throw no light upon the merits of this case.

According to the testimony of Cliness, Daybolt appeared to be "satisfied with the proposition" but made no offer on behalf of any supposed principal to purchase the land and stated that he did not know whether "his people," whoever they might be, would want the land.

Upon the latter point the witness said:

"Q. 47. Was this land proposition discussed with Mr. Daybolt, between you and Mr. Daybolt and Mr. Bond? A. Yes, it was, Mr. Daybolt told me that he didn't know whether their (his) people would want the land or not, and so I told Mr. Bond that it might be possible that we would have to take the land. He says, well, you will loose nothing on that. He says that land will sell on an average after the timber is cut off for twelve dollars per acre and then later on I stopped at Mr. Tusey's, who lived on the land adjoining their land and who looked after their land and we got up a talk about the land, and I asked him what he thought the land would be worth and he said that he thought—— . . ." After that the parties left the land and traveled upon the same train as far as Huntington, West Virginia, but nothing more was said concerning the proposed sale, and so far as the record shows the matter was not mentioned, much less pressed, by any of the plaintiffs after that time.

Some several months after the expiration of the thirty days within which plaintiffs claim they had the right to effect a sale of the property a number of gentlemen who are alleged to be stockholders and officers in the Standard Furniture Company together with the stockholders of the Bond Lumber Company formed the corporate defendant, Bond-Foley Lumber Company, and it purchased from the Bond Lumber Company the timber on the land for $612,500.00, leaving the latter company the owner of the tract of land which it is claimed is worth as much as $300,000.00.

It is upon these facts that plaintiffs rely for a recovery or for their right to have the issues submitted to the jury, and it is strenuously insisted that the court erred in sustaining the motion for a peremptory instruction. In making this insistence counsel cite us to a number of cases showing when a real estate broker is entitled

to his commission, but the principles announced in none of them are applicable to the facts of this case as we view the testimony.

In the first place the letter relied on as forming the contract is no contract at all. It expressly says: "This letter is not to be considered as an option nor must it be considered that we are appointing you as our agent to sell this property." According to its terms it was only a statement of the situation as it then existed, and expressed what the owners of the land would do if a purchaser was then present. Furthermore it states that to obtain a thirty days' option a payment of $10,000.00 would be required, and it is not even pretended that plaintiffs either offered to or did pay that or any other sum.

We are aware that Dunnington testified in a general way that in prior conversation with defendant, Bond, it was stated that the former and his associates might receive all above $600,000.00 for which the property was sold to a purchaser furnished by them, but he admits in his testimony that he wanted the negotiations reduced to writing and that he procured the letter copied above for that purpose. His testimony upon this point is:

"Q. 14. Now did you discuss this matter for some time before this letter was written? A. With Mr. Bond? Q. 15. Yes. A. Yes, sir; we had some talk about it before this letter was written. Q. 16. You reached in a general way some understanding about it? A. Reached one thing that I was to have authority to find a purchaser for it. Q. 17. The price was mentioned? A. Yes, sir. Q. 18. And the time was mentioned? A. Yes, sir. Q. 19. And you suggested that you wanted the authority in writing, I believe? A. Yes, sir. Q. 20. And then it was that Mr. Bond dictated or wrote this letter setting forth the price and terms and so on, that you have introduced here in evidence? A. Yes, sir. Q. 21. And that was done on April 24th, and just after you had completed your conversation about it? A. Yes, sir."

It therefore appears from the testimony, independent of the rule of law upon the subject, that all prior conversations and negotiations with reference to the employment of plaintiffs were merged into the written letter and plaintiffs are bound by its terms. That the law in the absence of a showing of fraud or mistake would con-

clusively presume that prior verbal engagements or conversations are to be treated as having been merged in a subsequent written agreement is held in the cases of Bassett v. Bassett, 159 Ky. 117; Toler v. Wheeler-Holden Co., 144 Ky. 829, and Macpherson v. Bacon's Exetr., 180 Ky. 867.

Being bound by the terms of the copied letter which did not constitute a contract the court properly held that plaintiffs had failed to sustain the allegations of their petition upon this one and vitally essential requisite to their recovery. But were we to waive that point and treat the case as if a valid contract existed there could be no recovery, for there is a total failure of testimony to show that plaintiffs ever found or produced a purchaser of the land at any price. It is not even shown by competent testimony that the man, Daybolt, had any connection with the Standard Furniture Company, but even if it was shown that he had such connection and that his authority extended to the purchase of property of the kind involved here he at no time made a proposition to buy the land, but on the contrary stated, according to plaintiff, Cliness, that he did not know whether the people whom he represented "would want the land or not." It is not shown that his supposed principal at any time thereafter expressed a desire to buy the land upon any terms. The contention that he represented the Standard Furniture Company is attempted to be shown only by the declarations, and no rule of law is better established than the one forbidding the establishment of agency by the proven declarations of the alleged agent. So that the proposition is reduced to this, that without any contract with defendants one of the plaintiffs induced a man claiming to be the agent of a principal who never purchased the land but some of whose officers, and perhaps stockholders, months afterwards formed a corporation with themselves and the stockholders of the corporate owner of the land as shareholders, which corporation purchased the timber on it, and upon these facts plaintiffs claim the right to recover. There is no testimony upon which to base a finding that the formation of the Bond-Foley Lumber Company or its purchase of the timber on the land was the result of any fraud, nor does it in anywise appear that the inspection of the property by Daybolt induced,

directly or remotely, that purchase, if it be conceded that he was a duly constituted agent of the Standard Furniture Company.

We are not astonished at the court's directing a verdict in defendants' behalf, and its action in doing so is affirmed.